Will counsel for appellant please come up and introduce yourself on the record to begin. Good morning, Your Honors. Jennifer Silbey on behalf of the appellants, Lorna Orabona, and I request if I could have three minutes for rebuttal, please. You may. Here before you, Your Honors, because our position is, and I'm going to focus initially on the ERISA preemption issue, which is kind of the main focus of the decision down on the district court, is that the district court focused on essentially the fact that even a portion or potentially a portion of Ms. Orabona's claims would, may be connected to the severance plan, which we do concede is an ERISA plan, that based on that, the district court decided that her state law claims were preempted by ERISA. Isn't that consistent with the court's decision in the Cannon v. Blue, across Blue Shield, decided mid-March of this year? But I think the factual situations are different, Your Honor, from that case. This case, she was firm. Facts may be different, but in Cannon, the court, we held the provisions of ERISA, you know, the preemption, it's sweeping. Anything that's literally related to that is going to be trumped. So doesn't that affect your case? I think, Your Honor, that there also needs to kind of be a consideration that, yes, ERISA has been interpreted as broad, and that's why I had cited two other circuit cases that showed that there was state law claims in cases similar to my clients in the fourth, ninth, and eleventh circuits that I outlined in my brief, where there was state law claims allowed to go forward. Some of them involved employees that were terminated, and their cause was, their, you know, argument was being improperly terminated, and there was a potential and some, you know, minor connection to an ERISA plan. You're in the first circuit. Yes, I understand that. So, the district court preempted on the grounds that to decide your claims, all of your claims, they were all related to Santander's severance policy, which incorporates the code of conduct, and this goes beyond calculation of damages, although the primary damages you are seeking are the damages that would be equivalent to what you say would be the monetary value of the severance benefits. So, as Judge Helpe just said, Cannon lays off that law very clearly, and Cannon is not an outlier. It recited half a dozen first circuit cases, and it's not cases that reach the same result. So, you have to tell us why these claims are not related, and you've made, what, six different state law causes of action. Do you concede some of them are, would require an interpretation of ERISA documents? Are you going to distinguish among your causes of action? So, I'm going to distinguish, Your Honor. I think, and especially, I initially kind of want to focus on the fraud and the negligent misrepresentation state law causes of action. Our, Ms. Orobona's argument is that Santander fraudulently and under a pretextual context terminated her from employment. The focus of the case is the improper actions and potentially fraud and negligent misrepresentation done by Santander for telling her this contextual reason of why she was terminated. Leaving out, as I, you know, I was also in my first amended complaint, the fact that within a matter of days they were about to have a significant layoff. I understand that the severance plan would have been involved in that layoff, but the focus of her action, and this is why we think it's also distinguishable from the other First Circuit cases, even the ones the District Court referenced and Santander has referenced, Tamper, Zortoro, and Carlo, is that her action herself is about the wrongful termination. It's not about the fact that she was denied severance benefits, but the fact that she was wrongfully terminated, and that's the focus of what the cause is, and I think that's what distinguishes this case from those other matters. But is there a separate pad of damages for that fraud aside from the ERISA plan benefits? I think there would be, Your Honor. I mean even beyond the fact that the severance, sorry what was that, I'm sorry. What's the theory of damages other than the ERISA benefits for what you're saying is the fraud? The other theory of damages besides the severance amounts would be the other benefits that she was not received, and also the fact of just the punitive actions that Santander, there was other health benefits she didn't receive, there was other well programs that Santander adhered if I'm remembering correctly off the top of my head, and then also I think there's a separate punitive damage aspect to this for the fraud itself if this case was to proceed and a jury was to consider that fraud claim, and I think that would be separate and apart from the severance package, and the severance benefits I should say. And so, Your Honors, I think She could have under the ERISA severance plan, she could have challenged her termination, she could have said what she's now asking a court to say, your reasons are pretextual, I did not do the things you have accused me of, and she chose not to. Your Honor, I choose to disagree with that just because I think she didn't have that choice, she was advised by Santander that she was terminated, no On the face of the document, the severance plan, and on the face of the appeals rights, she could have utilized that procedure and said my termination was not for cause, there was no cause to terminate me, I am entitled to the full benefits, all benefits from Santander. Why are you saying that she couldn't have appealed under the ERISA plan? Because she was never even, our review of the appeal process under the severance plan, my interpretation of it is that it's when you're either, you've applied for severance benefits and been denied, or they give you a certain amount of severance benefits and you're not happy with it, and that's where the appeal process came in. Ms. Orobono was terminated, not given any information of whether or not she could even consider the severance plan, she was just terminated and advised by a Spain-based employee which goes against their policies and procedures, that she was terminated that day and that if she took any further action, they were going to report her for her license. She was given a copy of the severance plan before she was terminated. Are you saying that there was, in addition to giving her the plan, there was a separate obligation for someone to say to her, by the way, be sure you know you have appeals rights? I think there should have been, Your Honor, because I think she received a copy of it. Yes, but what is the legal basis for that when she has the document in front of her that tells her she has the appeals rights? But again, I think looking at that appeals right, I don't think she, as a terminated employee, had that immediate right to appeal off that severance plan. So I don't think she had that option even through the severance plan. What are you saying is in the plan that would not have permitted her right to appeal the termination itself? I don't... My understanding of the plan is that she could have appealed the termination for cause. No, my review of the plan is that the appeal process through the severance plan is for when you've asked for severance and been denied and then there's the appeal process. She never initially asked for severance because she had been terminated. And then again, her understanding was she was terminated and needed to leave immediately and there was no other options for her besides that point, which is why she didn't even attempt to get severance. She could have gone to the employer and said, I'm entitled to severance benefits, and they would say, no, you're not. You were terminated for cause. That, you say, was the necessary first step to entitle her to use the ERISA appeals procedure? Yes. Okay. But she's free to go to court even though the ERISA plan allows her to request those benefits and get them if she's right. So you're attempting to do an end run around the ERISA appeals procedure. She controlled. She could have asked for benefits. She didn't. But she did take that step because she was going under the justifiable reliance by the day that she was terminated and what she was told that day, that she needs to take no further action. She's immediately terminated. There was actual normal procedures that, as I pointed out in the brief through my deposition transcript, that Santander's head of employment relations had stated that was the normal procedure for terminating an employee. And in this case, Santander specifically did not follow their own policies of how they terminate employees. So she justifiably relied on the fact that she had been immediately terminated. As I read the deposition testimony, you didn't ask, is that the procedure for employees who have been terminated for cause? You just asked, what's the procedure for terminated employees? I think I didn't include the entire deposition. I apologize. I think there was more questions along the lines of what the for cause steps. I just didn't submit the entire, if I remember correctly, I just didn't submit the entire deposition transcript. Let me ask you this. One thing of interest in your case was this, what you said was a threat to the licensing agency. Is there anything about her conduct that would have been appropriately reported? According to Santander and what they told her was... What was her position? Ms. Alvarez, she feels she didn't do anything inappropriately, that she, other employees, it was during COVID, other employees were forwarding these emails. There wasn't private information on them. Again, it was due to the pandemic at the time, so she felt she didn't do anything inappropriately. But Santander tried to make it sound as if she had done bad misconduct and that it was worth, that they felt it was worth, they could report it to the licensing commission, the licensing board. Thank you. You have three minutes for rebuttal. Thank you. Let's hear from Ms. Parker for Apelli. Please identify yourself and proceed. Thank you, Your Honor. Good morning and may it please the court. My name is Leslie Parker and together with my colleague, Brendan Ryan, I represent the Apelli Santander Bank N.A. Well-established Supreme Court and First Circuit precedent control this case. Ms. Orobona is contending that this court should alter that precedent based on inapplicable cases from 30 years ago from other circuits. However, this court, over those past 30 years, has Believe me, we know the law. So let's go back to Judge Thompson's question and then I have a separate one. She says in her brief, though not at oral argument, I didn't pursue severance benefits because I was threatened. I was threatened that I would be reported to the state authorities and I didn't want to lose all of my ability to continue in this field. So I gave in to the threat and I chose not to use the appeals procedure. Judge Thompson said, was there anything in her conduct that would have provided a basis to report her, I think, to a national organization? Yes, Your Honor. I believe it's the National Mortgage Lending System. What was there in her conduct that could have warranted such a reference? She was sending client information to her personal email account and this was proprietary Santander information and proprietary information for these individuals and clients that she was sending to a non-Santander email address. So that certainly would have been reportable. So everybody was on COVID lockdown and working from home? Well, she claims that this was part of this COVID lockdown, but I believe, or that it happened as well during COVID, but I believe that this was after COVID. This is in 2022 now. So we're beyond the point where it coincides with her already having given Santander notice that she's going to a competitor and that she'd like to renegotiate. So Santander is afraid she's going to use this client confidential information in a job with a competitor because she's got it on her home email? That likely it's not in the record, but I would argue that if, setting aside the basis that Santander had to report her, which they did, that still does not get her out of ERISA preemption land. What she's alleging here is an ERISA Section 510 claim and 502. She's claiming that someone was trying to interfere with her rights. Well, I was just trying to figure if there were any independent state causes of action that might be unrelated to ERISA. So I'm not sure that's what she's trying to say. So here, I believe she's alleging five different state law causes of action. And first, I'd like to talk about the fraud and negligent misrepresentation claims because those are very clear. She's claiming there that Santander terminated her to avoid paying her the severance. On the face of those claims, the court has to look at the ERISA plan to determine both of those. So she's alluding to her first three claims are wrongful termination, breach of an implied employment contract, as well as breach of the implied covenant of good faith and fair dealing. Those not only fail for a 12B6 reason, but they also are still ERISA preempted. She's attempting here to get to those severance benefits. She's not looking for a back pay or lost wages. She's looking for... No, she just told us she was totally apart from severance benefits. She was looking for health benefits that she might have otherwise gotten if she hadn't been terminated for cause. Correct, Your Honor. And while that is not the discussion of this ERISA preemption, that's likely preempted for ERISA reasons as well. But the main thrust, she's not denying here that she's looking for those severance benefits. And what she's claiming in those three causes of action is that Santander illegally terminated her not because of a protected category or some illegal reason. She's claiming that Santander did not go through the progressive discipline that she claims they typically use. However, the code of conduct, which is referenced in her complaint and so that this court can review, is very clear that it is an at-will employment and that there is no right to progressive discipline. You can be terminated at any time for any reason. So for both ERISA preemption, because you would need to look at that ERISA plan in order to determine, is she even eligible under the ERISA plan? And is she entitled to damages under the ERISA plan? And if so, how much? Those causes of action are preempted, but they also fail to state a claim upon which relief can be granted. Let me ask one, just to clarify, regarding the possible appeal, Santander's position is that she could have used that appellate procedure, correct? Yes, she could have used that appellate procedure. Counsel says it doesn't apply to her client. And that's incorrect. I pulled the plan while we were discussing that, and the plan very clearly states that just that all claims for benefits under this plan shall be made in writing within a certain number of days, period. If she had made a claim and Santander would have come back and said we're not paying you anything because you were terminated for cause, then that termination would have been adjudicated first through the administrative process, and then later if she chose to pursue it to court, it could have been adjudicated there. Yes, Your Honor. The plan lays out first an administrative process and then your right to judicial action, and it's very clear that you have that right and walks through the entire process. Did you understand plaintiff to be making any kind of estoppel? Because that was the only thing that I could think of that might get her somewhere as far as merit is concerned. She mentions briefly estoppel, but did you understand her to be making an estoppel argument? I didn't understand her to be making an estoppel argument, but I think if I'm understanding Your Honor's point about estoppel, I still think that would fall under Section 510 of ERISA here, because she's claiming that she was told don't go forward. If she was misled into not pursuing her rights because of a representation, an erroneous representation made by Santander, then to her detriment. Yes, but this Court has a number of cases that go exactly to that point. The Carlo case, Otero, Hampers, they're discussing when there is some sort of misleading statement related to the ERISA benefits. For example, I retired early because I thought that my ERISA benefits  Those were exhaustion cases, I thought, that they were made pursuant to claims to the plan benefits, but they had not pursued their administrative remedies. I believe that in those cases, there was also an issue of state court, state cause of action preemption when there was a fraudulent, some sort of allegation of fraud with respect to ERISA benefits. Well, go back to Ingersoll Rand. The Court said whether ERISA preemptions were a fraud or not. Yes, Your Honor, and Ingersoll Rand is exactly on point here. It is, and what the Court says there is this is, this implicates 510 and 502 in this case, and the wrongful termination claim is preempted there. So, there's one other point. She says the company did not follow its usual procedures with her, and she says, I took a 30B-6 deposition from Santander, and I got testimony that usually when there is a termination, it is a 30B-6 deposition. There is a notice of benefits that is given. So, she says basically that procedure wasn't followed here. So, did your 30B-6 witness actually say that here she was entitled to a notice of benefits, and she never got it? I don't think he ever said that, and in addition, the notice of benefits he was discussing was not the ERISA plan. I went back and looked at that testimony. He's saying you get your COBRA, you know, letter in the mail. You don't get the severance package. She was given the severance package about a month before in compliance with the law. She received the notice, and there's no testimony that they're handing a copy to everyone who walks out the door, and that's not required. Unless the court has other questions, there's no reason to abandon this court's precedent based on the facts of this case. These are ERISA claims with state law labels, and so we would respectfully request that this court affirm the judgment of the district court. Thank you, counsel. Ms. Sylvia, you have three minutes for rebuttal. Thank you. Just in response to what Santander had argued, looking at the plan, and again, while listening to her, I pulled it up, and it specifically says in the severance plan that employees are not entitled to any severance benefits, and it gives a list of categories, and one is misconduct or violation of competency policies, which is what Santander said Ms. Orbona did, which we can test, but if we're just looking at that, taking that for what it is, so even if she was to, you know, Ms. Orbona having the plan, it was clear in the plan language itself that according to Santander, she was not entitled to severance benefits, so it would lead to being told that she was terminated for cause for this misconduct that she did, and that she shouldn't take any further action to appeal that, why she would then take the steps to go through an appeal process for something she, according to her own document, said she's not entitled to. Excuse me, I'm losing my voice. The assumption would be she would do it because she disagreed that she had committed misconduct, and that she was therefore entitled to her package. But that's not the type of, that's not how the Santander plan is set up. Again, my review of the appeal process is, again, applying for severance benefits, or again, what you got and you don't agree with what the severance benefits are. And, you know, also kind of getting back to the other cases, and I know Your Honor has brought up the most recent case, Cannon v. Blue Cross Blue Shield. I just wanted to refresh my memory on that. That was the denial of benefits, it was a wrongful death claim under the denial of benefits. We know, we know, you don't need to do this. I have a question. When Judge Thompson asked you what other benefits are, or what damages would you be getting other than severance benefits, you said health benefits. Almost every employer has a ERISA plan that governs health benefits. Are you saying that this employer has health benefits that are not covered by an ERISA plan? No, I'm not saying, and I think I initially, I want to apologize. Don't you have a different preemption issue if you're seeking those benefits? Yes, I misspoke earlier and I wanted to correct that. So are you not seeking health benefits? Not health benefits specifically. You're seeking the severance benefits. It's the, what was, what she could have been entitled to, but also the fact that beyond that we're also seeking damages for the difference in wage, different pay, different other benefits that she would have had amount wise. If her employment had continued. What was that, sorry? If her employment had continued.